UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Crim. No. 1:07-cr-00075-CKK |
| **ERICK R. BROWN, and****MILAGROS L. MORALES,** | ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COUNTS ONE THROUGH EIGHT
OF THE INDICTMENT FOR LACK OF SPECIFICITY
(Defendant's Pretrial Motion No. 1)**

I.  **INTRODUCTION**

The government's opposition brief underscores the Indictment's defects and the merits of Defendants' Motion to Dismiss Counts One through Eight of the Indictment for Lack of Specificity. The nine-page purported "Facts" section at the beginning of the government's brief -- which cites no evidence or supporting affidavits or declarations -- contains numerous factual allegations which, if actually alleged in the Indictment, might save some of it from challenge under Rule 7(c)(1) of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution. Indeed, the opposition is an implicit acknowledgement that the Indictment fails to allege the facts constituting the offenses charged in Counts One through Eight with the requisite specificity. However, because the government is not limited to the version of the facts it now sets forth in its pleading, Defendants remain without fair notice as to what they must be prepared to defend at trial and of the factual allegations actually considered by the grand jury, giving rise to a substantial risk of unfair surprise at trial

and compromising Defendants' ability to plead double jeopardy in the event of a future prosecution. The Court should therefore disregard the government's effort to augment the Indictment. Quite simply, the Indictment must stand or fall on its own.[1]

Looking beyond the government's revised exposition of facts, Counts One through Eight as alleged are still predicated on the Indictment's conclusory allegations that Defendants made or caused witnesses to make, and agreed to make or cause witnesses to make, false statements about Jerome Jones' conduct in the Club U matter. Without more detail about what the false statements were and how they were false, the Indictment is insufficiently detailed to comport with the requirements of the Constitution and the Federal Rules of Criminal Procedure. Counts One through Eight should therefore be dismissed.

## II.    ARGUMENT

### A.    Counts Six Through Eight Cannot Stand On The Indictment's Generic Allegations Of False Statements

Contrary to the government's straw man argument, Defendants do not challenge Counts Six through Eight because the Indictment fails to allege verbatim the exact statements given to the AUSA by Defendants, Witness A and Witness B. Nor do Defendants challenge the sufficiency of these Counts because the Indictment fails to provide the evidence the government intends to prove to establish the commission of these alleged crimes.

---

[1] Even if the government's opposition could supplement the Indictment's allegations and be considered in evaluating its sufficiency, the Indictment would still lack the requisite specificity in many key respects. For example, the allegations in the government's opposition fail to provide any greater detail or notice about Defendants' own conduct. Specifically, the opposition does not identify any false statements or information that Defendants themselves gave to the AUSA. Nor does the opposition expound on the allegation that Defendants withheld exculpatory evidence, other than by specifying that the evidence was "significant." United States's Omnibus Response To Defendants' Joint Pretrial Motions at 8 ("Opp'n"). Thus, at minimum, even if the government's opposition could supplement the Indictment -- which it cannot -- Counts Five and Eight would be still be insufficient and subject to dismissal.

Rather, Defendants challenge Counts Six through Eight because they fail to convey the "core of criminality" for the offenses charged.  Russell v. United States, 369 U.S. 749, 764 (1962).  For false statement charges, the core of criminality is the substance of the actual false statement.  Notably, the government neglects to address any of the cases cited by Defendants in support of this fundamental proposition, including United States v. Nance, 533 F.2d 699, 700 (D.C. Cir. 1976); United States v. Weinberger, Crim. No. 92-235, 1992 U.S. Dist. LEXIS 14354, *12 (D.D.C. Sept. 29, 1992); United States v. Dale, 782 F. Supp. 615, 622 (D.D.C. 1991); and United States v. Clifford, 426 F. Supp. 696, 703 (E.D.N.Y. 1976).  Instead, the government cites several cases from outside this jurisdiction that do not involve charges of false statements or representations.[2]  Opp'n at 11.  Indeed, in one of those cases, United States v. Diecidue, 603 F.2d 535 (5th Cir. 1980), the court actually distinguished between the specificity required for the RICO charges at issue there and the false pretenses charges in Nance.  Diecidue, 603 F.2d at 547 (noting that "the distinction is that between a defendant's constitutional right to know what offense he is charged with and the need to know the evidentiary details which will be used to establish his commission of that offense").  Like the defendants in Nance, Defendants are constitutionally entitled to know the substance of the false statements at issue in the Indictment.

---

[2] The government relies on only one case from this jurisdiction, United States v. Conlon, 628 F. 2d 150 (D.C. Cir. 1980), in support of its interpretation of the Sixth Amendment's specificity requirement. In Conlon, the Court of Appeals for the D.C. Circuit applied the general rule that while "the indictment may use the language of the statute, [] that language *must be supplemented with enough detail* to apprise the accused of the particular offense with which he is charged." Id. at 155 (emphasis added).  And even though the Court in Conlon upheld the sufficiency of a charge under the government conflicts of interest statute, 18 U.S.C. § 208(a), the Court affirmed the district court's dismissal of three, more analogous charges for false declarations before the grand jury.  Also notable is the Court's observation that by providing greater specificity at oral argument on a motion to dismiss, the government "cast[ed] doubt on the sufficiency of the indictment." Id. at 156.  This is particularly germane here, where the government has devoted considerable space in its opposition brief to providing details absent from the Indictment.

Conveying the core of criminality here therefore requires more than mere conclusory allegations that Defendants provided or caused Witness A and Witness B to provide material untruthful information about Jerome Jones' conduct in the Club U incident. In its opposition, the government does not -- and cannot -- cite to instances where the Indictment alleges any statements or information given to the AUSA by Defendants, Witness A, or Witness B. And unlike the government's opposition brief, Opp'n at 13, the Indictment contains no allegations that Defendants told the AUSA or actually caused Witness A or Witness B to tell the AUSA that Jerome Jones acted alone in the Club U incident, stabbed as opposed to slashed the victim, or attacked the victim with something other than a box cutter. The government can only point to the Indictment's vague allegations that the statements and information at issue in Counts Six through Eight related to conduct falsely attributed to Jerome Jones, without specifying what that conduct was or how it was false. Indictment at 4 (¶ 8), 5 (¶ 10). Considering that Witness A and Witness B are alleged to have been eyewitnesses to the Club U incident, id. at 3 (¶ 7), and thus presumably spoke to the AUSA in great detail about many aspects of Jerome Jones' conduct that evening, such allegations fall well short of ensuring that Defendants are tried on the actual factual predicates for Counts Six through Eight voted by the grand jury. Accordingly, Counts Six through Eight should be dismissed.

  **B.**  **Counts One Through Five Fail to Allege With Specificity The Underlying Conduct From Which Defendants Can Take Notice Of Illegal Agreements Against Civil Rights Or To Obstruct Justice**

Defendants do not dispute the proposition to which the government devotes most of its argument in support of Counts One through Five -- that conspiracies often are inferred from underlying conduct, rather than by direct evidence of a written or verbal agreement. Opp'n at 14-16. That said, where the underlying conduct is the only basis for inferring the existence or

scope of an illicit agreement, as it is here, the underlying conduct must be alleged with sufficient specificity to apprise Defendants of the nature of the conspiracies with which they are charged. In this endeavor, the Indictment also fails.

While the Indictment contains numerous allegations about Defendants working together on the investigation of the Club U incident, it fails to allege with specificity conduct consistent with an agreement between them to violate the law. Contrary to the government's assertion, Opp'n at 15, the allegation that Defendant Brown agreed to work with Defendant Morales on the Club U investigation even though he was not part of Defendant Morales' squad does not suggest a nefarious collaboration. For the government's claim to make sense, one would have to conclude that Defendants decided to obstruct justice and "frame" Jerome Jones from the moment Defendant Brown agreed to assist Defendant Morales at the very outset of the investigation before they interviewed any witnesses -- an absurd suggestion. Nor, without more, does the allegation that Defendant Morales called Witness B after Defendant Brown had been removed from the investigation provide notice of a partnership in crime.

Even where the Indictment alleges wrongdoing, it does so with generic allegations of false statements, altered testimony, and withheld evidence. As noted above, there are no specific allegations identifying any statements, let alone false statements, made by Witness A and Witness B to the investigating AUSA. With respect to Witness C, the Indictment merely alleges that Defendants caused her to alter her account of Jerome Jones' conduct during the Club U incident, without providing any specifics about her original account or what she actually saw during the Club U incident. Similarly, the Indictment fails to specify any affirmative, false statements made by Defendants themselves to the AUSA or any exculpatory evidence they withheld from the AUSA.

It is these conclusory allegations of wrongful conduct that underlie the illegal agreements charged in Counts One through Five. Such allegations are wholly insufficient to provide Defendants with notice of the nature and scope of the conspiracies charged. Accordingly, Counts One through Five should be dismissed.

### III. CONCLUSION

For the reasons set forth above and in Defendants' opening memorandum of law, the Court should dismiss Counts One through Eight for failure to state the charged offenses with the requisite specificity.

Respectfully submitted,

_____
Reid H. Weingarten
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Counsel for Erick R. Brown


David Schertler
Danny Onorato
Schertler & Onorato, L.L.P.
601 Pennsylvania Avenue, N.W.
North Building – 9th Floor
Washington, DC 20004-2601
(202) 628-4199

Counsel for Milagros L. Morales

Dated: May 23, 2007