UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 1:07-cr-00075-CKK |
| ERICK R. BROWN, and MILAGROS L. MORALES, | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH FIVE
FOR FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. §§ 371 and 1512(c)
(Defendants' Pretrial Motion No. 2)**

I. INTRODUCTION

Defendants Erick R. Brown and Milagros L. Morales ("Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss Counts Two, Three, Four and Five of the Indictment for failure to state an offense under 18 U.S.C. §§ 371 and 1512(c). Because Section 1512(c) applies only to efforts to tamper with documents and other physical evidence, and the Counts at issue fail to allege any obstructive conduct related to such evidence, those Counts must be dismissed.

II. ARGUMENT

  A.  **The Conduct At Issue In Counts Two Through Five Does Not Fall Within The Scope Of Section 1512(c)(2)**

The conduct alleged in Counts Two through Five of the Indictment -- that Defendants purportedly "caused" witnesses to change their testimony -- is not the type of

conduct encompassed by Section 1512(c)(2), which applies only to tampering with physical evidence such as documents.

The only court that appears to have squarely considered the exact question at issue here explicitly held that "to violate § 1512(c)(2), the charged conduct must have some reasonable nexus to a record, document, or tangible object." United States v. Singleton, Criminal Action No. H-06-080, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006). In denying Defendant Singleton's motion to dismiss, the court specifically relied on the fact that the indictment alleged obstructive conduct relating to a document, finding that the defendant "knowingly and corruptly participated in the creation of a memorandum . . . that he expected would obstruct, influence, or impede" the pending government investigations. Id. at *5. Other courts have also recognized that the enactment of Section 1512(c) "created a specific subsection dealing with tampering of tangible evidence, in what was otherwise a statute that previously dealt only with tampering" of persons. United States v. Hutcherson, No. CRIM. 605CR00039, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006); United States v. Peel, Criminal No. 06-30049-WDS, 2006 WL 2864106, at *2 n.1 (S.D. Ill. Oct. 2, 2006) (same); see also United States v. Guardiola Ramirez, No. CRIM. 06-006 (HL), 2006 WL 573917, at *3 (D.P.R. Mar. 8, 2006) (drafting phony services contract in response to subpoena is type of conduct proscribed by Section 1512(c)(2), whereas attempting to persuade witnesses to provide false information to grand jury falls within the scope of Section 1512(b)(1)).

The government argues that Section 1512(c)(2) applies to a broader range of conduct and does not require any allegations relating to a document or other physical evidence, but none of the cases cited by the government explicitly support that proposition. In United States v. Hey, No. 03-80863, 2005 WL 1039388, at *5 (E.D. Mich. Apr. 29, 2005), for example,

the court denied the defendant's motion for acquittal, finding that the government had presented sufficient evidence to support the defendant's conviction. However, the court did not specifically consider the issue of whether Section 1512(c)(2) applies to conduct unrelated to any document or physical evidence, presumably because the defendant did not make such an argument. Similarly, in United States v. Long, No. 1:06CR00028, 2007 WL 218592, at *6 (W.D. Va. Jan. 29, 2007), also relied upon by the government, the court rejected the defendant's challenge of her conviction on the basis that the government failed to prove that her false testimony thwarted the grand jury's investigation. Again, however, the court did not explicitly consider the type of conduct covered by Section 1512(c)(2). Finally, the government cites United States v. Hutcherson, even though, as noted above, the court in that case explicitly noted that the enactment of Section 1512(c) "created a specific subsection dealing with tampering of tangible evidence." Hutcherson, No. CRIM 6:05CR00039, 2006 WL 1875955, at *2 (W.D. Va. July 5, 2006) (denying motion to dismiss obstruction count of the indictment).[1]

      In this case, the Indictment contains no allegations connecting Defendants' allegedly obstructive conduct to a document or other physical evidence, as it must to state an offense under Section 1512(c)(2). The government's attempt to argue that such a connection nevertheless exists is both convoluted and contradictory. First, the government relies on the draft arrest warrant to establish a connection between Defendants' allegedly obstructive conduct and a document, but the Indictment makes clear that the warrant was drafted *before* the alleged obstruction took place. Specifically, the draft arrest warrant was based on the original videotaped statements obtained by Defendants. The government contends that Defendants

---

[1] The court later rejected the defendant's Rule 29 motion, which was based on an argument under United States v. Aguilar, 515 U.S. 593 (1995), but did not re-address the issue of a connection to documents or physical evidence. Hutcherson, 2006 WL 270019, at *3.

engaged in obstructive conduct only *after* the AUSA refused to sign the warrant. There is no allegation in this case that Defendants prepared a second arrest warrant based on fabricated testimony. Therefore, the draft arrest warrant clearly cannot serve as a basis for a violation of Section 1512(c)(2).

Second, the government relies on "possible Grand Jury testimony or a witness statement written by law enforcement." United States's Omnibus Response To Defendants' Joint Pretrial Motions at 22 ("Opp'n"). As an initial matter, even assuming *arguendo* that false statements memorialized in testimony before a grand jury or in written witness statements constitute a reasonable nexus to a document for purposes of Section 1512(c)(2), it is worth noting that none of the cases cited by the government involve statements by witnesses other than the defendants themselves, as is the case here.

Furthermore, the facts of the <u>Singleton</u> case, upon which the government principally relies in making this argument, are distinguishable from those of the instant case in a way which impacts the applicability of Section 1512(c)(2). In <u>Singleton</u>, the indictment alleged that the defendant provided false information to his employer's outside lawyers, which the lawyers then used to create a written report that was submitted to the government as part of its investigation into the company's price reporting to energy trade publications. 2006 WL 1984467, at *5. This type of conduct -- lying to internal investigators, knowing that those lies will be incorporated in a written report to be transmitted to the government -- is not explicitly covered by statutory provisions prohibiting false statements or perjury, so the application of Section 1512(c)(2) is arguably more appropriate than in cases involving false statements before the grand jury, which could be prosecuted under such provisions. Therefore, the government's

attempt in this case to use potential grand jury testimony as the necessary connection to documentary evidence under Section 1512(c)(2) is not supported by Singleton.

Moreover, the government's reliance on statements such as grand jury testimony squarely contradicts its earlier argument made in relation to the Hey and Long cases. On page 18 of its opposition brief, the government claims that the defendants' conduct in Hey and Long involved "no conceivable nexus to a document, report, or tangible object" because they were convicted on the basis of their false testimony before the grand jury. Opp'n at 18. Yet a mere four pages later, the government attempts to argue that witnesses' false statements before the grand jury can serve as the basis for a connection between obstructive conduct and documentary evidence. The government cannot have it both ways. The fact remains that the Indictment in this case alleges no "reasonable nexus" between Defendants' purported conduct and any document or other physical evidence, which is the only type of obstructive conduct proscribed by Section 1512(c)(2). For that reason, Counts Two through Five must be dismissed.

### B.     Section 1512(c)(2) Should Be Narrowly Interpreted

As made clear in Defendants' opening brief, there is ample case law supporting Defendants' argument that the language of Section 1512(c)(2) triggers application of the statutory canons *ejusdem generis* and *noscitur a sociis*, which dictate a narrow reading of that subsection. Rather than responding to this argument and the cases cited in support thereof, however, the government instead cites only to Merriam-Webster's Collegiate Dictionary, contending that the use of the word "otherwise" in subsection (c)(2) indicates that the provision is meant as a catch-all, and is subject to no limitation whatsoever. This Court should reject the government's interpretation of Section 1512(c)(2) and the "otherwise" clause because it renders

- 6 -

the well-established statutory canon of *ejusdem generis* a nullity and leads to an absurdly overbroad result.

The word "otherwise," when following an iteration of specifics, as in Section 1512(c)(2), signals that residual language will follow and the canon of *ejusdem generis* will apply. Although the government claims to "ha[ve] difficulty reading this statutory provision ["otherwise"] as anything but a catchall . . . provision," Opp'n at 21, the United States Supreme Court reached the opposite construction of "otherwise" in Breininger v. Sheet Metal Workers Int'l Ass'n, 493 U.S. 67 (1989). In that case, a statute regulating a union's ability to "fin[e], suspend[d], expe[l], *or otherwise disciplin[e]*" its members was held to apply only to the "sort of established disciplinary process" denoted by the previously enumerated categories of fines, suspensions and expulsions. Id. at 90-91 (applying *ejusdem generis*) (emphasis added). Similarly, several circuit courts have also held that clauses beginning with the word "otherwise" introduce residual terminology when they are preceded by an enumerated list. For example, in United States v. Montgomery, 402 F.3d 482 (5th Cir. 2005), the court interpreted the clause "or otherwise involves conduct that presents a serious potential risk of physical injury," which followed a list of enumerated offenses within the statutory definition of "any felony," as a residual clause, finding that it should be construed within the context of the preceding list of enumerated offenses. Id. at 487; see also Columbia Pictures Indus. v. Professional Real Estate Inv., Inc., 866 F.2d 278, 282 (9th Cir. 1989) (under "*ejusdem generis*, the term 'otherwise communicate' should be construed consistently with the term 'transmit'"); Lone Star Steel Co. v. NLRB, 639 F.2d 545, 553 (10th Cir. 1981) ("selling and conveying are permanent in character and under the rule of *ejusdem generis* 'otherwise transferring or assigning' should be viewed as

referring to other means of permanently transferring property, rather than leasing or contracting which are temporary in character").

Applying the reasoning of these cases, it is clear that the phrase "otherwise obstructs, influences, or impedes any official proceeding" in Section 1512(c)(2) must be interpreted in relation to the language in subsection (c)(1) that immediately precedes it, that is, "alters, destroys, mutilates, or conceals a *record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding*. . . ." 18 U.S.C. § 1512(c)(1) (emphasis added). Thus, Section 1512(c)(2) is directed at conduct similar to that proscribed in the preceding subsection, but is meant to address tampering with physical evidence not covered by Section 1512(c)(1). Nevertheless, the government argues that Section 1512(c)(2) "contains no limitation on the obstructive conduct that falls within its definition." Opp'n at 20. Such a statement defies common sense; if there were no limitation on the conduct proscribed by subsection (c)(2), all other statutory provisions relating to obstruction would be rendered superfluous. In the Singleton case, the court specifically rejected the same broad interpretation of Section 1512(c)(2) advanced by the government in this case -- that is, a literal reading of the "very expansive language" of subsection (c)(2) without any reference to the preceding language in subsection (c)(1) -- finding that such a reading "totally disregards the clause's context within § 1512, specifically § 1512(c)." 2006 WL 1984467, at *3. The Singleton court concluded that because "[t]he residual language in subsection (c)(2) must . . . capture conduct similar to but different from that specifically described in (c)(1)," it must "require some nexus to tangible evidence." Id.

In sum, a narrow interpretation of Section 1512(c)(2), consistent with the application of *ejusdem generis*, is wholly appropriate and does not lead to an illogical or overbroad result.

C.  **The Context Of Section 1512(c)'s Enactment Demonstrates That It Was Not Intended To Address The Type Of Conduct At Issue Here**

The legislative history of Section 1512(c) also confirms that the statute was intended to reach only conduct related to tampering with physical evidence and further highlights the deficiencies in the government's overbroad interpretation of the provision.

The government completely fails to address the historical context within which Section 1512(c) was enacted, ignoring the fact that, in drafting the provision, Congress was responding to what it perceived as a deficiency in the obstruction laws relating to document destruction. As the sections of the legislative history cited in Defendants' opening brief make clear, the explicit purpose of Section 1512(c) was to criminalize the type of document destruction undertaken by Arthur Andersen during the Enron investigation. Taking this historical context into account, it is apparent that the government's attempt in this case to prosecute non-document related obstructive conduct under Section 1512(c) falls far outside the scope of what Congress intended.

D.  **Any Remaining Ambiguity About The Scope Of Section 1512(c) Must Be Resolved In Defendants' Favor Under The Rule Of Lenity**

If any doubt remains about whether Section 1512(c) proscribes the conduct alleged in Counts Two through Five, the rule of lenity dictates that the ambiguity must be resolved in Defendants' favor.

The government does not address the application of the rule of lenity in this case, presumably because it is beyond dispute that in the context of a criminal statute, "it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." Crandon v. United States, 494 U.S. 152, 158 (1990). See also United States v. Granderson, 511 U.S. 39, 54 (1994) ("where text, structure, and history fail to establish that the Government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor"); Valdes v. United States, 475 F.3d 1319, 1323 (D.C. Cir. 2007) (the rule of lenity "works to protect a citizen from punishment under a statute that gives at best dubious notice that it has criminalized his conduct"). Therefore, to the extent that any uncertainty remains as to whether the conduct alleged in the Indictment falls within the scope of Section 1512(c), the Court must resolve that ambiguity in Defendants' favor, and dismiss Counts Two through Five.

### III. CONCLUSION

For the foregoing reasons, this Court should dismiss Counts Two through Five of the Indictment for failure to state an offense under 18 U.S.C. §§ 371 and 1512(c)(2).

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Counsel for Erick R. Brown

        David Schertler
        Danny Onorato
        Schertler & Onorato, L.L.P.
        601 Pennsylvania Avenue, N.W.
        North Building - 9th Floor
        Washington, D.C. 20004-2601
        (202) 628-4199

        Counsel for Milagros L. Morales

Dated: May 23, 2007