UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERICK R. BROWN, and MILAGROS L. MORALES,<br><br>Defendants. | Crim. No. 07–75 (CKK) |

FILED
JUN - 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MEMORANDUM OPINION
(June 7, 2007)

Presently before the Court is the [9] United States's Motion to Review Representation, which is fully briefed. Upon review of the Motion and related filings and the relevant statutes and case law, the Court shall GRANT the [9] United States's Motion to Review Representation. Having reviewed the representation of Defendant Milagros L. Morales based on the Government's Motion and related filings, an official transcript of a hearing to review said representation held on May 21, 2007, and the relevant statutes and case law, the Court concludes that no actual conflict exists, the potential for any conflict to arise is extremely remote, both Defendant Morales and Defendant Erick R. Brown have clearly and unequivocally waived their rights with respect to any potential conflict that may arise, and Defendant Morales may continue to be represented by David Schertler and Danny Onorato in this case.

I. BACKGROUND

Co-Defendants Brown and Morales, both Detectives for the Metropolitan Police Department (MPD) were indicted on March 21, 2007 on the following charges related to their investigation of the murder of Terrance Brown (no relation) on February 13, 2005 (including their interactions with witnesses during their investigation): Count 1–Conspiracy Against Civil

(N)

Rights in violation of 18 U.S.C. § 241; Counts 2-5–Conspiracy to Obstruct Justice in violation of 18 U.S.C. §§ 2, 371, 1512(c)(2); Counts 6-8–Provision of Material and False Information in violation of 18 U.S.C. §§ 2, 1001. Both Defendants were arraigned in Court on March 28, 2007. The United States Attorney's Office for the Western District of Virginia is litigating this matter, as the United States Attorney's Office for the District of Columbia recused itself from this matter. Both Defendants had initially retained David Schertler and Danny Onorato of the law firm Schertler & Onorato, L.L.P. during the investigation of their conduct between February 2005 and December 2006, at which point Defendant Brown retained Reid Weingarten and Brian Heberlig of Steptoe & Johnson, L.L.P. Defendant Morales continues to be represented by Mr. Schertler and Mr. Onorato.

On April 11, 2007, the Government filed the [9] United States's Motion to Review Representation. In its Motion to Review Representation, the Government requests that the Court review the propriety of Mr. Schertler and Mr. Onorato's continued representation of Defendant Morales in light of their joint representation of both Defendants prior to their being indicted. The Motion to Review Representation asks the Court to assess whether any actual or potential conflict exists, highlighting the following concerns:

> Any controversy about who did what in dealing with the witnesses with whom the detectives tampered would create a conflict during trial. Either Schertler or Onorato may cross-examine witnesses using information that they have learned as both Morales's and Erick Brown's attorneys, while constitutionally, their focus must be for the benefit of their current client, Morales. Such questioning could easily be to Erick Brown's detriment. In the worst case scenario for this issue, they may be in the position of examining their former client, Erick Brown, using information that they have previously obtained pursuant to their attorney client relationship with him, now severed. However, if Schertler and Onorato decline to examine Erick Brown because of the unseemliness of being in the position of cross-examining a former client, they may well be harming Morales's defense. Either situation would be inappropriate.

Gov't's Mot. to Review at 5. The Government's concerns focus on possible prejudice to either Defendant Morales or Defendant Brown in the event that Mr. Schertler or Mr. Onorato were to cross-examine Defendant Brown during trial.

Defendants' Joint Response reveals that Mr. Schertler and Mr. Onorato advised both Defendants of the potential conflict in their joint representation of both Defendants in February 2005, but that both Defendants were willing to waive any potential conflict at that point and that Mr. Schertler and Mr. Onorato "felt confident that [Defendants'] interests were virtually identical and that they had a strong common interest in defending jointly against these allegations" after discussing the underlying matter with both Defendants. Defs.' Resp. at 2. Mr. Schertler and Mr. Onorato represented both Defendants during separate interviews with the United States Attorney's Office for the District of Columbia in April 2005, during a presentation on behalf of both Defendants before the United States Attorney for the Western District of Virginia on August 4, 2006, and during a presentation on behalf of both Defendants to the Department of Justice's Civil Rights Division on November 22, 2006. Defs.' Resp. at 2, 4. Finally, Mr. Weingarten and Mr. Heberlig, acting on behalf of Defendant Brown, and Mr. Schertler and Mr. Onorato, acting on behalf of Defendant Morales, jointly gave a presentation to the Department of Justice's Civil Rights Division on February 8, 2007. *Id.* at 4.

Defendants identify and discount three potential conflicts in their Response. First of all, if Defendant Brown were to shift blame to and testify against Defendant Morales, Mr. Schertler and Mr. Onorato's cross-examination of Defendant Brown could either not be vigorous enough in light of their prior relationship with Defendant Brown (which would prejudice Defendant Morales) or involve the introduction of evidence adverse to their former client (which might

prejudice Defendant Brown). Second, if Defendant Morales were to shift blame to Defendant Brown, Mr. Schertler and Mr. Onorato would be in the position of introducing evidence adverse to their former client. *Id.* at 13. However, Defendants' counsel argue that the likelihood that either Defendant would shift blame to the other is very slim as (1) both have made consistent statements to the Government regarding their own involvement and that of the other Defendant (maintaining that neither Defendant acted inappropriately) and (2) the Defendants have "an overwhelming common interest in presenting a joint defense." *Id.* at 14. Third, if either Defendant were to enter into a plea agreement with the Government, Mr. Schertler and Mr. Onorato would be in the position of introducing evidence adverse to their former client. *Id.* at 13-14. However, as both Defendants were offered a pre-trial plea that involved the dismissal of any charge brought against Defendants after a period of pre-trial "diversion" and their agreement to resign from the police force, and both Defendants refused this offer, Defendants' counsel argue that "[t]he likelihood that either one of them would be willing to enter into a cooperation agreement now, which is unlikely to be as favorable as the initial offer, is extremely remote." *Id.* at 15. Finally, Defendants proposed that the Court promulgate an inquiry of Defendants, guided by the principles set forth in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to determine if both had fully waived any potential conflict related to Defendant Morales' representation. *Id.* at 16-17.

On April 17, 2007, the Court appointed John Aldock, Esq.[1] to represent and counsel

---

[1] Mr. Aldock, who graciously agreed to represent Defendant Morales during the Court's review of her representation, is a partner at Goodwin Proctor LLP, chair of Goodwin Proctor's office in Washington, D.C., chair of the Advisory Committee on Rules of the United States District Court for the District of Columbia, and a former Assistant United States Attorney for the District of Columbia.

Defendant Morales with respect to the issues raised in the [9] United States's Motion to Review Representation. On April 30, 2007, the Government filed its Reply after speaking with Mr. Aldock, wherein it agreed that Defendants' proposed inquiry was "well thought out and appropriate" and stated that the Government simply deemed it "prudent to warn both defendants that this unusual representation structure could blossom into a significant conflict that may greatly harm one or both of their interests." Gov't's Reply at 2. On May 16, 2007, Mr. Aldock filed a Status Report, indicating that Mr. Aldock had "investigated the alleged conflict of interest, interviewed Morales, and spoken to counsel for the Government, as well as co-counsel for Morales and counsel for Brown," concluding that "no actual conflict of interest exists at this time and the likelihood that a conflict will develop over the course of trial is, in my opinion, remote." Aldock Report ¶¶ 7, 8. Mr. Aldock further expressed the view that based on his interview with Defendant Morales, he concluded that Defendant Morales understands the potential conflicts (which were delineated in Defendants' Response) and knowingly and intelligently wishes to waive her right to new counsel. *Id.* ¶¶ 9, 10. Finally, Mr. Aldock also supported the Court's use of the proposed *Curcio* inquiry. *Id.* ¶ 12.

On May 21, 2007, at 3:00 p.m, the Court held a hearing to review the continued representation of Defendant Morales by Mr. Schertler and Mr. Onorato. At the outset, the Court repeated the potential areas for conflict iterated above and that "[t]he indictment includes a conspiracy count and the fact that the criminal conduct of the Defendants in this case overlap[s]." Tr. at 6. Counsel for the Government, Mr. William F. Gould, indicated that he agreed it was appropriate that he be excused for the inquiry of Defendants and their counsel and that he would "completely agree with your Honor's rendition of this and I do think in many ways it serves not

5

only Miss Morales but also to some extent Mr. Brown and the efficiency of justice for Mr. Schertler and Mr. Onorato to stay on this case, but I do think it is obviously very important that certain issues be raised with both of them." Tr. at 7. After excusing Mr. Gould and sealing the Courtroom, the Court questioned Mr. Aldock, who eloquently expounded on his written opinion that no actual conflict exists nor is it likely that a potential conflict will arise. Mr. Aldock described Defendant Morales as a "sophisticated" client, noted that both Defendants had been presented with and declined the favorable plea offer set out above, noted that Defendant Morales has no interest at present in a plea, and stated that both Defendants' positions on the facts had been set out consistently and in great detail at meetings with the Government. Mr. Aldock did not believe that financial concerns motivate Defendant Morales' desire to keep Mr. Schertler and Mr. Onorato as counsel. Finally, he indicated that Mr. Schertler and Mr. Onorato could effectively represent Defendant Morales without producing any lapse in representation. The Court also made an inquiry of Mr. Schertler and Mr. Onorato, who agreed that both Defendant Morales and Defendant Brown are sophisticated clients and further did not see any problem related to the conspiracy charge or Defendant Morales' designation as the "lead" detective on the case. The Court made a detailed inquiry of Defendant Morales, during which Defendant Morales stated her understanding of the potential areas of conflict and the confidential nature of the attorney-client relationship, iterated her reasons for wanting Mr. Schertler and Mr. Onorato to continue to represent her and that this decision was not primarily a financial one, acknowledged that she understands her right to be represented by an attorney focused only on her interests with no conflict of interest, described the rights she wishes to waive, and affirmatively agreed to waive voluntarily her right to conflict-free counsel.

The Court also made an inquiry of Mr. Weingarten and Mr. Heberlig, wherein they stated that they do not see a potential conflict in this case with Mr. Schertler and Mr. Onorato's continued representation of Defendant Morales and stated that they would not be uncomfortable with Mr. Schertler or Mr. Onorato cross-examining their client, indicated that most of the operative facts of the case are already on the record in some form, and expressed their belief that Defendant Brown understands the discussion and potential for conflict and wishes to waive any rights related to such potential conflict. Finally, the Court made an inquiry of Defendant Brown, during which Defendant Brown articulated and indicated that he understands and does not have any concerns regarding the raised potential conflicts, does not have any objection to Mr. Schertler and Mr. Onorato's continued representation of Defendant Morales, and waives any issues relating to conflicts in terms of counsel.

## II. LEGAL FRAMEWORK & DISCUSSION

"'[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'" *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006) (quoting *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-625, 109 S. Ct. 2646, 2652, 105 L. Ed. 2d 528 (1989)). However, a criminal defendant's right to counsel of his choice is not absolute. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697, 100 L. Ed. 2d 140 (1988). "[T]he trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Id.* at 161. "Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may

decline a proffer of waiver, and insist that defendants be separately represented." *Id.* at 162. In fact, in the case of finding an actual conflict, defined as producing an actual lapse in representation, a court would be remiss not to refuse a waiver of said conflict, as the finding of an actual conflict on appeal amounts to ineffective assistance of counsel without the typical *Strickland* showing. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S. Ct. 1708, 1718-19, 64 L. Ed. 2d 333 (1990); *United States v. Gantt*, 140 F.3d 249, 252 (D.C. Cir. 1998). However, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163, 108 S. Ct. 1692. "Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162.

In this case, the Court finds based on the information set forth in the Parties' filings and the testimony of Mr. Aldock, counsel for both Defendants, and both Defendants themselves that no actual conflict exists in this case and the potential that a conflict will arise out of the continued representation of Defendant Morales by Mr. Schertler and Mr. Onorato is quite remote. In light of the multiple joint presentations by the Defendants to the Government, wherein the Defendants' concurring views on the events related to the Indictment have already been established, each Defendant's testimony may be bolstered, or impeached or discredited if such testimony were to change, based on statements already on the record. Accordingly, neither the

pending conspiracy charge nor any formal difference in each Defendant's role in the murder investigation would appear to affect the fact that they have already established the contents of their testimony and view of the events for the Government, and that such views support one another. Furthermore, both Defendants have already rejected a plea offer just short of dismissing all charges outright such that it is not realistic that either (1) a more favorable plea offer would be offered by the Government or (2) either Defendant would accept a plea offer at this time. The Court further finds that Defendant Morales, an MPD Detective, understands the nature of the potential conflicts at issue and has knowingly, intelligently, and voluntarily waived her right to conflict-free counsel in declaring her wish to keep Mr. Schertler and Mr. Onorato as retained counsel. The Court further finds that Defendant Brown, an MPD Detective, understands the nature of the potential conflicts at issue and has knowingly, intelligently, and voluntarily waived his right to object to Mr. Schertler and Mr. Onorato's continued representation of Defendant Morales.

### III. CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT the [9] United States's Motion to Review Representation. Having reviewed the representation of Defendant Morales based on the Government's Motion and related filings, an official transcript of a hearing held before the Court to review said representation held on May 21, 2007, and the relevant statutes and case law, the Court concludes that no actual conflict exists, the potential for any conflict to arise is extremely remote, both Defendant Morales and Defendant Brown have voluntarily, knowingly, and intelligently waived their rights with respect to any potential conflict that may arise, and Defendant Morales may continue to be represented by David Schertler and Danny

Onorato in this case. The transcript attached to this Memorandum Opinion of the *ex parte* portion of the May 21, 2007 hearing shall be maintained under seal with the Government's consent and is available only to the Court and to the Defendants in this case until further order of the Court. An Order accompanies this Memorandum Opinion.

Date:   June 7, 2007

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge